FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

VITALII CHYCHASOV

CASE NO. 8:22-cr-72-KKM-CPT
18 U.S.C. § 371
18 U.S.C. § 1029(a)(2)
18 U.S.C. § 1029(a)(3)

SEALED

# INDICTMENT

The Grand Jury charges:

## COUNT ONE
(Conspiracy)

### A. Introduction

At all times material to this Indictment:

1. VITALII CHYCHASOV was an administrator of multiple websites that were comprised of several domains (hereinafter, the "Marketplace").

2. The Marketplace was an e-commerce storefront that facilitated the unauthorized sale of social security numbers belonging to United States citizens. This included the unauthorized sale of social security numbers belonging to individuals who resided in or previously resided in the Middle District of Florida.

3. There was no legitimate business conducted on the Marketplace. The Marketplace existed as a platform for individuals to buy social security numbers.

4. An "access device" was any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number (including a social security number) or other telecommunications service, equipment, or instrument identifier, or other means of account access that could be used alone or in conjunction with another access device to obtain money, goods, services, or any other thing of value, or that could be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

5. An "unauthorized access device" was any access device that was lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

6. Digital currencies were electronically sourced units of value that existed on the internet and were not stored in a physical form, nor were they issued by any government.

7. "Bitcoin" was a type of digital currency. Bitcoin was generated and controlled through computer software operating on decentralized peer-to-peer (or person-to-person) networks. Users of Bitcoin sent units of value to and from "addresses," which were unique strings of numbers and letters that functioned like a bank account number. Bitcoin transactions were recorded on a publicly available, distributed ledger, known as a "blockchain." Because Bitcoin was transferred peer-to-peer, users could avoid traditional, regulated financial institutions that collected information about their customers and maintained anti-money laundering and bank secrecy programs.

8.  "WebMoney" was an online payment processor used for international peer-to-peer payments in a variety of currencies. WebMoney generally attempted to verify customers' identities and thus required a real identity to set up an account.

### B.  The Conspiracy

9.  Beginning on an unknown date, but from as early as in or around January 2015, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

VITALII CHYCHASOV,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the grand jury, to commit the following offenses against the United States:

a.  trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); and

b.  possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3).

### C.  Manner and Means

10.  The manner and means by which VITALII CHYCHASOV and others sought to accomplish the conspiracy included, among others, the following:

a.  It was a part of the conspiracy that the conspirators would and did develop, and commission the development of, the Marketplace so as to, among other things, offer for sale social security numbers and other personal information of

3

U.S. citizens, and to assist buyers in perpetrating fraud using those social security numbers, and to enrich themselves and others.

  b. It was further a part of the conspiracy that the conspirators would and did would and did operate an administrative panel to maintain and oversee the Marketplace.

  c. It was a further part of the conspiracy that conspirators would and did offer contact information and customer support services to Marketplace buyers.

  d. It was a further part of the conspiracy that conspirators would and did use wire transmissions, including web-based communications, as well as other instrumentalities of interstate and foreign commerce, to facilitate their operation and administration of the Marketplace.

  e. It was a further part of the conspiracy that the social security numbers would be further used to commit a variety of crimes, which activities affected interstate and foreign commerce.

  f. It was a further part of the conspiracy that conspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by government and law-enforcement agencies.

  g. It was a further part of the conspiracy that conspirators would and did cultivate and use online monikers that were distinct from their true identities.

h. It was a further part of the conspiracy that conspirators would and did advertise the Marketplace, so as to promote the Marketplace and to attract new buyers.

i. It was a further part of the conspiracy that conspirators would and did require the Marketplace buyers to use digital payment methods to make purchases on the Marketplace, so as to conceal the identities of conspirators and buyers, as well as to conceal the illicit activity that was occurring on the Marketplace.

j. It was a further part of the conspiracy that the Marketplace administrator conspirators would and did create and maintain records for buyers, including usernames, purchases, balances, and bitcoin addresses.

k. It was a further part of the conspiracy that conspirators would and did allow purchasers to search for social security numbers by both location and age of the U.S. citizen, and would and did charge progressively higher prices based on these parameters.

l. It was a further part of the conspiracy that conspirators would and did share in the proceeds that the Marketplace generated, so as to promote and perpetuate the scheme, as well as to enrich themselves.

m. It was further part of the conspiracy that conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### D. Overt Acts

11. In furtherance of the conspiracy and to effect its objects, VITALII CHYCHASOV or his conspirators committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

    a. On or about January 2, 2015, a conspirator registered a domain associated with the Marketplace.

    b. On or about November 4, 2015, a conspirator registered an additional domain associated with the Marketplace.

    c. November 24, 2015, a conspirator placed an advertisement on cybercriminal darkweb forum regarding the Marketplace services.

    d. On or about December 5, 2017, one or more bitcoin addresses associated with the Marketplace transmitted a quantity of bitcoin to one of the administrators.

    e. On or about December 9, 2018, one or more bitcoin addresses associated with the Marketplace transmitted a quantity of bitcoin to one of the administrators.

    f. On or about November 5, 2020, one or more bitcoin addresses associated with the Marketplace transmitted a quantity of bitcoin to one of the administrators.

    g. On or about May 23, 2020, a conspirator exchanged customer support messages with an undercover agent located in the Middle District of Florida.

    h. On or about May 25, 2020, the conspirators possessed, within the Middle District of Florida, 15 social security numbers belonging to persons who resided in or previously resided in the Middle District of Florida.

    i. On or about March 4, 2021, a conspirator registered an additional domain associated with the Marketplace.

    j. On or about April 21, 2021, a conspirator registered an additional domain associated with the Marketplace.

    k. On or about October 29, 2021, a conspirator exchanged customer support messages with an online covert employee located in the Middle District of Florida posing as a buyer of social security numbers.

  All in violation of 18 U.S.C. § 371.

## COUNT TWO
### (Trafficking in Unauthorized Access Devices)

  1. The allegations contained in Parts A and C of Count One of this Indictment are incorporated by reference as if fully set forth herein.

  2. From on or about January 1, 2020, through on or about December 31, 2020, in the Middle District of Florida and elsewhere, the defendant,

VITALII CHYCHASOV,

knowingly and with the intent to defraud, trafficked in unauthorized access devices, that is social security numbers, and by such conduct obtained a thing of value totaling $1,000 or more, and such trafficking affected interstate and foreign commerce.

In violation of 18 U.S.C. §§ 1029(a)(2) and (c)(1)(A)(i) and 2.

## COUNT THREE
### (Possession of Unauthorized Access Devices—18 U.S.C. § 1029(a)(3))

1.  The allegations contained in Parts A and C of Count One of this Indictment are incorporated by reference as if fully set forth herein

2.  On or about May 25, 2020, in the Middle District of Florida and elsewhere, the defendant,

VITALII CHYCHASOV,

knowingly and with intent to defraud, possessed and aided and abetted others in the possession of 15 or more unauthorized access devices, that is, the social security numbers of 15 or more Florida residents, said possession affecting interstate and foreign commerce.

In violation of 18 U.S.C. §§ 1029(a)(3), 1029(c)(1)(A)(i), and 2.

## FORFEITURE

1.  The allegations contained in Counts One through Three of this Indictment are incorporated by reference as if fully set forth herein for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C).

2.  Upon conviction of a violation of 18 U.S.C. § 1029, or a conspiracy to violate 18 U.S.C. § 1029 (18 U.S.C. § 371), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such

violation, and pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the offense.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained from the offenses, which represents the proceeds of the offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(1), and 1029(c)(2).

A TRUE BILL,

███████████████

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Rachel Jones
Assistant United States Attorney

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
February 22

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

VITALII CHYCHASOV

## INDICTMENT

Violations:   18 U.S.C. § 371
18 U.S.C. § 1029(a)(2)
18 U.S.C. § 1029(a)(3)

A true bill,

███████████████████████████
Foreperson

Filed in open court this 23rd day of February 2022.

_____
Clerk

Bail $_____

GPO 863 525