AF Approval *TCK for SCN*                                    Chief Approval *CCB*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:22-cr-72-KKM-CPT

VITALII CHYCHASOV

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, VITALII CHYCHASOV, and the attorneys for the defendant, Arkady Bukh and Jon Hackworth, mutually agree as follows:

### A.    Particularized Terms

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Indictment. Count One charges the defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. § 371. Count Two charges the defendant with trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2).

2.    Maximum Penalties

Count One carries a maximum sentence of five years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100.

Defendant's Initials V. C.

Count Two carries a maximum sentence of ten years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

(1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

(2) the Defendant knew the unlawful purpose of the plan and willfully joined in it;

(3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

(4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements of Count Two are:

(1) the Defendant knowingly trafficked in one or more unauthorized access devices;

Defendant's Initials  V. C.               2

      (2)    the Defendant, during a 12-month period, obtained a thing or things of value totaling $1,000 or more as a result of such trafficking in unauthorized access devices;

      (3)    the Defendant acted with the intent to defraud or deceive; and

      (5)    the Defendant's conduct affected interstate or foreign commerce.

2.    Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

3.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, arising out of the facts detailed in this plea agreement.

4.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from

Defendant's Initials __V. C.__        3

the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

5.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials  V. C.                    4

6.   Credit for Time Served in Extradition Detention

Pursuant to USSG §5G1.3(c) and 18 U.S.C. § 3584, at the time of sentencing, the United States will not oppose the defendant's request to the Court that any sentence imposed allow for the defendant to receive credit against that sentence for time served while the defendant pended extradition from Hungary. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below

Defendant's Initials V. C.                 5

a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant

Defendant's Initials  V. C .          6

understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

      (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have

Defendant's Initials V. C.          7

heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials  V. C.               8

10.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: a $5,000,000 order of forfeiture, which represents the proceeds the defendant personally obtained as the result of the commission of the offenses to which the defendant is pleading guilty, as well as:

1.   the internet domain BLACKJOB.BIZ;

2.   the internet domain SSNDOB.CLUB;

3.   the internet domain SSNDOB.VIP; and

4.   the internet domain SSNDOB.WS,

which were used to commit the offenses to which the defendant is pleading guilty and were part of the series of domains that comprised the "Marketplace," as further described in the Factual Basis. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $5,000,000 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been

Defendant's Initials  V. C.                    9

transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural

Defendant's Initials V. C.            10

challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be

Defendant's Initials  V. C .           11

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be

Defendant's Initials V. C.                    12

determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

      11.   Removal - Consent and Cooperation

        The defendant agrees and consents to removal from the United States following completion of the defendant's sentence and agrees to waive the defendant's rights to any and all forms of relief from removal or exclusion. The defendant further agrees to abandon any pending applications for relief from removal or exclusion, and to cooperate with the Department of Homeland Security during removal proceedings.

**B.**    **Standard Terms and Conditions**

      1.   Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C.

Defendant's Initials V. C.       13

§ 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background,

Defendant's Initials  V. C.                 14

character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank

Defendant's Initials  V. C.          15

records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials  V. C.              16

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at

Defendant's Initials  V. C .                    17

the time of defendant's entry of a plea of guilty pursuant hereto.

    10.   Voluntariness

        The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for

Defendant's Initials _V. C._        18

perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.   <u>Factual Basis</u>

      Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

      Beginning on an unknown date, but at least from in or around January 2015, and continuing through on or about February 23, 2022, VITALII CHYCHASOV, residing in Ukraine, conspired with others (including other administrators and buyers) to traffic in and possess access devices. CHYCHASOV was an administrator of multiple websites that were comprised of several domains (hereinafter, the "Marketplace"). The Marketplace was an e-commerce storefront that facilitated the unauthorized sale of social security numbers and other personal information (collectively, "PII") belonging to United States citizens. This included the unauthorized sale of PII belonging to individuals who resided in or previously resided in the Middle District of Florida. CHYCHASOV and others developed the Marketplace to assist buyers in perpetrating fraud using those social security numbers and to enrich themselves and others. The conspirators operated an administrative

Defendant's Initials V. C.     19

panel to maintain the Marketplace and offered customer support to Marketplace buyers. The conspirators employed various techniques to protect their anonymity and to thwart detection of their activities by government and law-enforcement agencies, including using online monikers that were distinct from their true identities.

An "access device" was, among other things, a personal identification number (including a social security number) or other means of account access that could be used alone, or in conjunction with another access device to obtain money, goods, services, or any other thing of value. An "unauthorized access device" was any access device that was lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

Digital currencies were electronically sourced units of value that existed on the internet and were not stored in a physical form, nor were they issued by any government. "Bitcoin" was a type of digital currency. Bitcoin was generated and controlled through computer software operating on decentralized peer-to-peer (or person-to-person) networks. Users of Bitcoin sent units of value to and from "addresses," which were unique strings of numbers and letters that functioned like a bank account number. Bitcoin transactions were recorded on a publicly available, distributed ledger, known as a "blockchain." Because Bitcoin was transferred peer-to-peer, users could avoid traditional, regulated financial institutions that collected information about their customers and maintained anti-money laundering and bank secrecy programs.

Marketplace buyers used digital payment methods, including bitcoin, to

Defendant's Initials V. C.            20

make purchases on the Marketplace. The Marketplace administrator conspirators maintained records for buyers, including usernames, purchases, balances, and bitcoin addresses.

CHYCHASOV controlled three Jabber messaging accounts affiliated with the Marketplace: ramashka@jabber.dk, blackinfo@exploit.im, and ldr.men@xmpp.ru. Chychasov used ramashka@jabber.dk to communicate with other Marketplace administrators. Moreover, one of the Marketplace domains, SSNDOB.WS, was registered on or about November 4, 2015, by ramashka@india.com (also controlled by CHYCHASOV). The ldr.men@xmpp.ru Jabber account received automatic updates from the Marketplace approximately every 30 minutes. Each message contained a list of client accounts that had received bitcoin deposits in the prior 30 minutes, and the corresponding amount of deposit in bitcoin and USD, the current conversion rate (to USD), as well as the domain to which the deposit was made. Blackinfo@exploit.im was one of the Jabber handles listed as a support contact on one of the Marketplace domains.

On or about May 25, 2020, an investigator acting in an undercover capacity ("UC") deposited Bitcoin into a Marketplace-controlled bitcoin address to facilitate the purchase of PII from one of the domains. On or about May 25, 2020, the UC, while present within the Middle District of Florida, purchased stolen PII, including social security numbers, unauthorized access devices, belonging to 15 individual victims who, based upon the PII record detail, appear to reside, or have resided, in the Middle District of Florida. The UC's deposit went into a bitcoin

Defendant's Initials  V. C .        21

address associated with the Marketplace ("Address A"). Address A was associated with approximately 4,248 other addresses (collectively, the "Marketplace Wallet"). Between on or about August 2, 2017, and on or about October 12, 2021, the Marketplace Wallet had received more than 989 bitcoin (approximately $19.2M USD on the dates of transfer). Approximately 19 transactions originating from the SSNDOBCLUB cluster totaling approximately 45.99 bitcoin (approximately $1.38M) were sent directly to a single account at HitBTC, a virtual currency exchange based in Chile.

Records obtained from HitBTC revealed that the account that had received over $1M in bitcoin from the Marketplace Wallet was registered to CHYCHASOV using the email address petrporox@ukr.net. According to the HitBTC records alone, in calendar year 2020, CHYCHASOV earned approximately $69,806 (from the sale of stolen social security numbers, some of which belonged to Middle District of Florida victims) and in calendar year 2021, CHYCHASOV earned approximately $1,274,332 (from the sale of stolen social security numbers, some of which belonged to Middle District of Florida victims). CHYCHASOV provided a Ukrainian passport (FC748068) to authenticate the HitBTC account.

HitBTC access logs revealed that an IP address ending in .254 logged in or interacted with CHYCHASOV's HitBTC account on at least 20 occasions between on or about February 17, 2019, to on or about April 24, 2020. On at least six occasions, IP address .254 successfully authenticated via remote desktop to a Marketplace infrastructure server with an IP address ending in .28 (located in

Defendant's Initials _V. C._       22

Switzerland) between on or about January 4, 2020, and April 13, 2020. The IP address .254 geo-locates to Slavyansk, Donetsk Region, Ukraine, the same city in which CHYCHASOV resided.

CHYCHASOV also maintained an account at Bitfinex, a virtual currency exchange, with the username ramashka. The ramashka Bitfinex account received approximately 53.6 bitcoin (approximately $314,197 USD on the dates of transfer) directly from the Marketplace Wallet from in or around August 2017, through in or around September 2018. Bitfinex provided access logs for the ramashka account. An IP address ending in .254 (the same IP also accessed CHYCHASOV's HitBTC account and a SSNDOBCLUB infrastructure server) accessed the ramashka Bitfinex account approximately 78 times between on or about August 29, 2017, through on or about September 5, 2018. According to the data found within one of the domain's backend databases, at the time the server was imaged, 2,325,793 usable access devices (social security numbers) had been recorded as recently sold. From November 2015 through May 2022, across all domains, the servers reflected $19,303,008 earned for the sale of access devices. A single buyer from the site used stolen PII that he purchased to steal and launder $9,139,307. CHYCHASOV admits that he personally obtained $5,000,000 for his participation in the trafficking and possession of these access devices.

Defendant's Initials  V. C.          23

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 15th day of _JUNE_, 2023.

ROGER B. HANDBERG
United States Attorney

Vitalii Chychasov
Defendant

Arkady Bukh
Attorney for Defendant

Jon Hackworth

Jon Hackworth
Attorney for Defendant

Rachel K. Jones
Assistant United States Attorney

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

24