UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                  Case No. 8:22-cr-72-KKM-CPT

VITALII CHYCHASOV

**UNITED STATES' MOTION FOR ORDER OF FORFEITURE AND PRELIMINARY ORDER OF FORFEITURE FOR DIRECT ASSETS**

Pursuant to 18 U.S.C. § 982(a)(2)(B) and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the United States of America hereby files this motion for an order of forfeiture against the defendant in the amount of $5,000,000, representing the amount of proceeds he obtained as a result of his participation in the conspiracy to commit access device fraud charged in Count One of the Indictment and trafficking in unauthorized access devices charged in Count Two.

In addition, pursuant to 18 U.S.C. § 1029(c)(1)(C) and Rule 32.2(b)(2), the United States moves for a preliminary order of forfeiture for the following, which were used or intended to be used in the conspiracy to commit access device fraud charged in Count One of the Indictment and trafficking in unauthorized devices charged in Count Two:

1. the internet domain BLACKJOB.BIZ;
2. the internet domain SSNDOB.CLUB;
3. the internet domain SSNDOB.VIP; and
4. the internet domain SSNDOB.WS.

The United States further asks that, in accordance with his Plea Agreement (Doc. 40 at 11), the order of forfeiture and preliminary order of forfeiture become final as to the defendant at the time it is entered. In support of its motion, the United States submits the following memorandum of law.

## MEMORANDUM OF LAW

I. **Statement of Facts**

    A. **Allegations Against the Defendant**

    1.    The defendant was charged in an Indictment, in relevant part, with (1) conspiracy to commit access device fraud, in violation of 18 U.S.C. § 371, and (2) trafficking in unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c)(1)(A)(i), and 2.  Doc. 4.

    2.    The Indictment also contained forfeiture allegations putting the defendant on notice that, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)C), the United States would seek, including but not limited to, an order of forfeiture in the amount of proceeds obtained from the offenses and any property used or intended to be used to commit the offenses. *Id.* at 8-9.

    B. **Finding of Guilt**

    3.    On July 20, 2023, the defendant pled guilty to Counts One (conspiracy to commit access device fraud) and Two (trafficking in unauthorized access devices) before United States Magistrate Judge Christopher P. Tuite, who recommended that the defendant's guilty plea be accepted.  Docs. 46, 49.  On August 7, 2023, United

States District Judge Kathryn Kimball Mizelle accepted the defendant's plea and adjudicated him guilty. Doc. 50. The defendant's sentencing is currently set for October 11, 2023.

    4.    On pages 19 through 23 of his Plea Agreement (Doc. 40) the defendant admitted, among other things, that from at least in or around January 2015, and continuing through on or about February 23, 2022, while residing in Ukraine, he conspired with others to traffic in and possess access devices. The defendant was an administrator of multiple websites that were comprised of several domains (the Marketplace). The Marketplace was an e-commerce storefront that facilitated the unauthorized sale of social security numbers and other personal information (PII) belonging to United States citizens. The defendant and others developed the Marketplace to assist buyers in perpetrating fraud using those social security numbers and to enrich themselves and others.

An "access device" was, among other things, a personal identification number (including a social security number) or other means of account access that could be used alone, or in conjunction with another access device to obtain money, goods, services, or any other thing of value. An "unauthorized access device" was any access device that was lost, stolen, expired, revoked, canceled, or obtained with intent to defraud. "Bitcoin" was a type of digital currency that was transferred peer-to-peer, so users could avoid traditional, regulated financial institutions that collected information about their customers and maintained anti-money laundering and bank

secrecy programs. Marketplace buyers used digital payment methods, including bitcoin, to make purchases on the Marketplace.

The defendant controlled three Jabber messaging accounts affiliated with the Marketplace. Additionally, one of the Marketplace domains, SSNDOB.WS, was controlled by the defendant. One of the Jabber accounts received automatic updates from the Marketplace approximately every 30 minutes which contained a list of client accounts that had received bitcoin deposits in the prior 30 minutes, and the corresponding amount of deposit in bitcoin and USD, the current conversion rate (to USD), as well as the domain to which the deposit was made.

On or about May 25, 2020, an investigator acting in an undercover capacity (UC) deposited Bitcoin into a Marketplace-controlled bitcoin address to facilitate the purchase of PII from one of the domains. The UC purchased stolen PII, including social security numbers, unauthorized access devices, belonging to 15 individual victims. The UC's deposit went into a bitcoin address associated with the Marketplace. The address was associated with approximately 4,248 other addresses (the Marketplace Wallet). Between on or about August 2, 2017, and on or about October 12, 2021, the Marketplace Wallet had received more than 989 bitcoin (approximately $19.2M USD on the dates of transfer). Approximately 19 transactions originating from the SSNDOBCLUB cluster totaling approximately 45.99 bitcoin (approximately $1.38M) were sent directly to a single account at HitBTC, a virtual currency exchange based in Chile.

Records obtained from HitBTC revealed that the account that had received over $1M in bitcoin from the Marketplace Wallet was registered to the defendant. According to the HitBTC records, in calendar year 2020, the defendant earned approximately $69,806 (from the sale of stolen social security numbers) and in calendar year 2021, he earned approximately $1,274,332 (from the sale of stolen social security numbers).

The defendant also maintained an account at Bitfinex, a virtual currency exchange, into which he received approximately 53.6 bitcoin (approximately $314,197 USD on the dates of transfer) directly from the Marketplace Wallet from in or around August 2017, through in or around September 2018. Bitfinex provided access logs for the defendant's account and an IP address (the same IP address that also accessed the defendant's HitBTC account and a SSNDOBCLUB infrastructure server) accessed the Bitfinex account approximately 78 times between on or about August 29, 2017, through on or about September 5, 2018. According to the data found within one of the domain's backend databases, at the time the server was imaged, 2,325,793 usable access devices (social security numbers) had been recorded as recently sold. From November 2015 through May 2022, across all domains, the servers reflected $19,303,008 earned from the sale of access devices. The defendant admits that he personally obtained $5,000,000 for his participation in the trafficking and possession of these access devices.

### C. Admissions Relating to Forfeiture

5. In paragraph 10 of his Plea Agreement, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C), the defendant agreed to a $5,000,000 order of forfeiture, which the defendant agreed represents the proceeds he personally obtained as a result of the commission of the offenses, as well as the internet domains BLACKJOB.BIZ, SSNDOB.CLUB, SSNDOB.VIP, and SSNDOB.WS, which were used to commit the offenses and were part of the series of domains that comprised the "Marketplace," as further described in the Factual Basis of the plea agreement. Doc. 40 at 9. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p). *Id.* The defendant further admitted that as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. *Id.* at 9-10.

## II. Applicable Law

The United States is entitled to an order of forfeiture against the defendant, pursuant to 18 U.S.C. § 982(a)(2)(B), which provides for the forfeiture of any property constituting, or derived from, proceeds the defendant obtained directly or indirectly as result of the conspiracy to commit access device fraud (18 U.S.C. § 371), and/or trafficking in unauthorized access devices (18 U.S.C. § 1029(a)(2)).

In addition, the United States may criminally forfeit, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used, or intended to be used, in a conspiracy to

commit access device fraud (18 U.S.C. § 371), and/or trafficking in unauthorized access devices (18 U.S.C. § 1029(a)(2)).

### A. Order of Forfeiture

For cases in which a defendant no longer has the actual dollars or property traceable to proceeds in his possession, or the government cannot locate those assets, the obligation to forfeit simply takes the form of an order of forfeiture in favor of the United States. *See United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008). Rule 32.2(b)(1) provides that, where the government seeks an order of forfeiture, the Court must determine the amount of money that the defendant will be ordered to pay.

The defendant admitted that he has dissipated the criminal proceeds that he obtained from his offenses. Doc. 40 at 9-10. Because the United States could not locate all of the specific property constituting or derived from the proceeds the defendant obtained as a result of his offenses, the United States seeks an order of forfeiture against the defendant in the amount of $5,000,000, pursuant to Rule 32.2(b)(2). As the defendant has agreed, he obtained $5,000,000 as a result of his participation in the conspiracy to commit access device fraud, and/or trafficking in unauthorized access devices. If the Court finds that at least $5,000,000 was obtained by the defendant, and that he has dissipated those proceeds, then it is appropriate for the Court to enter an order of forfeiture against the defendant in that amount pursuant to 18 U.S.C. § 982(a)(2)(B) and Rule 32.2(b)(2).

### B.     Direct Assets

Rule 32.2(b)(1) provides that, when the government seeks to forfeit specific property, the Court must determine whether the government has established the requisite nexus between the property and the defendant's crime.  Fed. R. Crim. P. 32.2(b)(1).  As the defendant has agreed, the internet domains identified above were used or intended to be used by him in his conspiracy to commit access device fraud and/or trafficking in unauthorized access devices; therefore, the assets are forfeitable pursuant to 18 U.S.C. § 1029(c)(1)(C).

### III.    Conclusion

For the reasons stated above, the United States requests that, pursuant to 18 U.S.C. § 982(a)(2)(B), and Rule 32.2(b)(2), the Court enter an order of forfeiture against the defendant in the amount of $5,000,000, for which he will be held liable.

The United States further requests that, because the $5,000,000 in proceeds was dissipated by the defendant, the United States may seek, as a substitute asset, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), forfeiture of any of the defendant's property up to the value of $5,000,000.

The United States further requests that, pursuant to 18 U.S.C. § 1029(c)(1)(C), and Rule 32.2(b)(2), the Court enter a preliminary order of forfeiture for the internet domains identified on page one, *supra*.

The United States further requests that, in accordance with his Plea Agreement (Doc. 40 at 11), the preliminary order of forfeiture become final as to the defendant at the time it is entered.

Upon issuance of the Preliminary Order of Forfeiture for Direct Assets, the United States will provide written notice to all third parties known to have an alleged legal interest in the property and will publish notice on the Internet at www.forfeiture.gov of its intent to forfeit the property. Determining whether a third party has any interest in the property must be deferred until a third-party files a claim in an ancillary proceeding under Rule 32.2(c).

As required by Federal Rule of Criminal Procedure 32.2(b)(4)(B), the United States requests that the Court include the forfeiture when orally pronouncing the sentence and in the judgment. *See* Fed. R. Crim. P. 32.2(b)(4)(B) and *United States v. Kennedy*, 201 F.3d 1324, 1326 (11th Cir. 2000).

The United States further requests that the Court retain jurisdiction to address any third-party claim that may be asserted in these proceedings, to enter any further order necessary for the forfeiture and disposition of such property, and to order any substitute assets forfeited to the United States up to the amount of the order of forfeiture.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   *s/ Suzanne C. Nebesky*
       SUZANNE C. NEBESKY
       Assistant United States Attorney
       Fla. Bar No. 59377
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602
       Tel:   (813) 274 6000
       E-mail: suzanne.nebesky@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that August 23, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

*s/Suzanne C. Nebesky*
SUZANNE C. NEBESKY
Assistant United States Attorney
