UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                      CASE NO. 8:22-cr-72-KKM-CPT

VITALII CHYCHASOV

**SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files the following sentencing memorandum regarding the sentencing of defendant Vitalii Chychasov.

As set forth in the offense conduct portion of the PSR, this case involves a series of largely identical online marketplaces alleged to be operated several administrators, including Chychasov. The sites were accessible through several URLs, including SSNDOB.WS, SSNDOB.CLUB, SSNDOB.STORE, and SSNDOB.VIP, and sold personally identifiable information of U.S. citizens, including names, social security numbers, and addresses, to buyers all over the world. Each listing on the marketplaces included at least one social security number, which is considered an access device. The site began operating in around August 2017 and had millions of social security numbers for sale.

On February 23, 2022, a federal grand jury returned an Indictment in against Chychasov charging him with: (i) conspiracy to commit access device fraud, in violation of Title 18, United States Code, 18 U.S.C. § 371 (Count 1); (ii) trafficking in unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(2), (c)(1)(A)(i), and 2 (Count 2); and (iii) possession of unauthorized access, in violation of 18 U.S.C. §§ 1029(a)(3), (c)(1)(A)(i), and 2. Chychasov was arrested in Hungary and extradited to the U.S. in July 2022.

Stolen social security numbers are used in a wide variety of frauds and scams, and cause immense pecuniary and emotional harm to those whose identities have been stolen. Social security numbers are used to process tax returns[1], apply for government benefits and obtain credit from financial institutions. Accordingly, stolen social security numbers can be used to commit a variety of frauds, including U.S. tax fraud, unemployment insurance fraud, loan fraud, credit card fraud, and the like.

Having a social security number stolen and used is a deeply personal and violative experience. Victims often have to spend significant time contacting credit agencies, credit card companies, and/or the U.S. Internal Revenue Service to correct the myriad effects of identity theft. Victims may have to pay for identity monitoring service, or may miss out on benefits to which they are entitled because others have used their identities to obtain those benefits.

---

[1] Indeed, the United States has identified false and fraudulent tax returns filed in the names of persons whose information was listed for sale on one of the marketplace URLs.

For his part, defendant Chychasov admits he earned at least $5million from this venture. The site itself earned nearly $20million, according to server databases, and the site sold millions of social security numbers.

Chyhasov's guidelines are correctly calculated under the 11th Circuit's current case law. Note 3(F)(i) establishes a floor of at least $500 in loss per access device (social security number) for this kind of offense. USSG § 2B1.1, comment. (n.3(F)(i)). This rule has roots as old as the Guidelines themselves. The original Guidelines set the minimum loss amount for stolen credit cards at $100 per card. See USSG § 2B1.1 comment. (n.4) (1987). In 1998, Congress told the Commission to amend the Guidelines to include "an appropriate penalty for offenses involving the cloning of wireless telephones[.]" Wireless Telephone Protection Act, Pub. L. No. 105-172, § 2(e)(1), 112 Stat. 53, 55 (1998). During this review, the Commission learned that the average loss per stolen credit card was over $1,000. Cellular Phone Cloning Final Report at 8-9 & n.12, Econ. Crimes Pol'y Team, U.S. Sent'g Comm'n (Jan. 25, 2000), available at https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/intellectual-property-and-tech/20000125-cell-phone-cloning/clonexs.pdf. But the policy team, concerned with disparity and fit issues, advised that increasing the loss figure that much would "lead to disparate results" for certain crimes and suggested that "an amount somewhere between $100 and $1,000 might be less problematic." *Id*. at 8.

3

Based on this analysis, the Commission increased the estimated loss amount to $500 for all access devices. USSG App. C Vol. II, at 57 (Amend. 596). As it explained, "the Commission's research and data supported increasing the minimum loss amount . . . from $100 to $500 per access device." *Id*. at 63.

Under the *Kisor* framework, this rule deserves deference under *Auer v. Robbins,* 519 U.S. 452 (1997). At step one, the term "loss," when applied to access device offenses, is ambiguous. It could mean the actual amount charged to stolen credit cards, but it also could include consequential damages such as replacement costs or identity-protection measures. The word "loss" may encompass the "detriment or disadvantage involved in being deprived of something" or indirect, intangible, or unrealized losses. *See American Heritage Dictionary of the English Language* 1063 (3d ed. 1992).

A "district court's loss calculation need not be made with precision and may be properly based on a reasonable estimate given the information available." *United States v. Wilson*, 788 F.3d 1298, 1317–18 (11th Cir. 2015). Thus, when assessing whether the $500-per-access-device rule fits within the zone of ambiguity, this Court should consider whether it represents a reasonable estimate of the loss from this type of offense. It does. $500 is a data-based estimate of the average loss from credit card fraud[2], including actual, intended, or indirect losses.

---

[2] Credit card fraud is only one of the many, many crimes that can be committed with a social security number.

4

If anything, $500 lowballs that figure. *See Cellular Phone Cloning Final Report* at 8–9. Thus, it falls within zone of ambiguity.

Finally, at step three, the special rule's character and context entitle it to controlling weight. Note 3(F)(i) reflects the Commission's "authoritative" and "official" position, *see Kisor*, 139 S. Ct. at 2416, and it went through full notice-and-comment rulemaking. *See* 65 Fed. Reg. 26,880, 26,895 (May 9, 2000); *Dupree*, 57 F.4th at 1280 (Pryor, C.J., concurring) ("Unlike most agency interpretive rules, Guidelines commentary ordinarily goes through the same notice-and-comment and congressional review procedures as substantive guideline revisions."). Some quantitative estimate of the loss from credit card fraud—either $100 or $500 per card—has been part of § 2B1.1 since 1987. This rule also implicates the Commission's substantive expertise and reflects the Commission's "fair and considered judgment." *Kisor*, 139 S. Ct. at 2417.

The Commission studied this issue and found that the average loss from these offenses was much higher than the original $100-per-device figure. *See* USSG App. C Vol. II, at 63. In sum, the $500-per-access-device rule merits deference, and the Court should apply it in this case.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: *Rachel Jones* (signature)

Rachel K. Jones
Assistant United States Attorney
Florida Bar. No. 91492
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Phone:   (813) 274-6000
Fax:     (813) 274-6178
Email:   Rachel.Jones@usdoj.gov

U.S. v. CHYCHASOV                                    Case No. 8:22-cr-72-KKM-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jon Hackworth
Arkady Bukh

                                                /s/ *Rachel K. Jones*
                                                Rachel K. Jones
                                                Assistant United States Attorney
                                                Florida Bar. No. 91492
                                                400 N. Tampa Street, Suite 3200
                                                Tampa, FL 33602
                                                Phone:     (813) 274-6000
                                                Fax:         (813) 274-6178
                                                Email:      Rachel.Jones@usdoj.gov